**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000400
12-JUL-2024
08:09 AM
Dkt. 61 SO**

NO. CAAP-20-0000400

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

DAVID BENNETT GRIFFIN, Plaintiff-Appellant/Cross-Appellee,
v.
AMPORN NOIHA GRIFFIN, Defendant-Appellee/Cross-Appellant

APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
(CASE NO. 3DV17100134K)

### SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Hiraoka and Wadsworth, JJ.)

**David** Bennett Griffin appeals, and **Amporn** Noiha Griffin cross-appeals, from the **Divorce Decree** entered by the Family Court of the Third Circuit on May 14, 2020.[1] We affirm.

David and Amporn were married on February 11, 2014. David filed for divorce on June 16, 2017. Trial was held on March 5, 2020. The family court enforced the parties' **Premarital Agreement**, which required that David pay $150,000 to Amporn within 30 days after the Divorce Decree was filed. The court also ordered that David and Amporn bear their own attorney's fees and costs.[2] The court entered findings of fact (**FOF**), conclusions of law, and an order granting the divorce. David and

---

[1] The Honorable Wendy M. DeWeese presided.

[2] The family court had ordered that David advance $7,500 to Amporn for attorney's fees, subject to reallocation at trial. The family court credited that amount to David, so that David's total payment of $150,000 to Amporn was reduced to $142,500.

Amporn do not challenge the findings of fact. The Divorce Decree was entered on May 14, 2020. These appeals followed.

### David's Appeal

David and Amporn signed the Premarital Agreement on February 11, 2014. It provided that should the parties divorce, David would pay Amporn $150,000 in lieu of any alimony or spousal support. David testified that Amporn was "ripping things up" after they had an argument. David left the house. When he returned, the signed Premarital Agreement and a signed amendment were missing. Amporn denied destroying the Premarital Agreement; she also denied seeing, signing, or tearing up an amendment to it. The family court admitted an unsigned copy of the Premarital Agreement into evidence by stipulation; David and Amporn stipulated it "was a valid and enforceable agreement."

On March 26, 2014 (just over a month after they married), David transferred $132,000 to Amporn's mother in Thailand to buy an acre of land. David testified he and Amporn spoke about how that money would be an advance on the $150,000 he would owe Amporn if they were divorced. David testified he asked his attorney to draft an amendment to the Premarital Agreement. He sent the $132,000 to Amporn's mother without having Amporn sign anything. David testified that Amporn "continued to ask him for $15,000 to finalize the land purchase." David testified he received the Premarital Agreement amendment around August 2014, he and Amporn signed it, and he transferred $15,000 to Amporn's mother on October 17, 2014. David argues that the family court erred by failing to credit the $147,000 he paid to Amporn's mother against his $150,000 liability under the Premarital Agreement.

In addition to the $147,000 David sent to Amporn's mother, he had paid $112,170[3] to Amporn and her relatives over the course of their relationship, and Amporn bought a vehicle using $20,000 of David's money. The family court found:

---

[3] The family court's FOF No. 27 contains a mathematical error.

> 32. The Court does not find it credible that [David] as an educated and successful business owner and consultant, who was sophisticated enough to understand pre-marriage that he needed to protect his assets and insisted on a [premarital agreement], would now, post-marriage allow himself to be "intimidated" or "pressured" by [Amporn]. The Court finds it is not credible that [David] would make a "business deal" (as he put it) with [Amporn] to the tune of $147,000 and not have the "business deal" memorialized *in advance* by a writing. Moreover, once the deal was allegedly done, according to [David], he made *no* copies of the Amendment, did *not* send the original or any type of copy to his attorney, or even clearly notify his attorney that the Amendment had been signed. He did *not* employ the services of a notary, nor did he have the Amendment translated into Thai as he had done with the PMA, less than a year earlier. And, even after [Amporn] tore up the Amendment, he continued to give substantial sums of money to her family. ***The Court does not find credible evidence that [David] negotiated an Amendment.***[4] Instead the Court finds as to the money sent to [Amporn]'s mother, that it was a gift, just like the other amounts [David] gave to [Amporn] and her family members.

(Bold italics added.)

"It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact." Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006) (citation omitted). We will not disturb the family court's credibility determination. Id. Its finding that the money David sent to Amporn's mother was a gift is supported by substantial evidence, and is not challenged on appeal by David. That finding is dispositive of David's appeal; we need not address David's contentions that the family court's conclusions of law were wrong.

---

[4] "After marriage, a premarital agreement may be amended or revoked only by a written agreement signed by the parties. The amended agreement or the revocation is enforceable without consideration." Hawaii Revised Statutes § 572D-5 (2018).

**Amporn's Cross-Appeal**

Amporn contends the family court erred by not awarding her attorney's fees or costs.  We review for abuse of discretion.  Markham v. Markham, 80 Hawaiʻi 274, 287-88, 909 P.2d 602, 615-16 (App. 1996).  The family court concluded:

> 17.    It is fair and reasonable, in light of this Court's conclusion that the [Premarital Agreement] shall be enforced, which awards [Amporn] $150,000 without offset of the $147,000 given to [Amporn]'s mother, that each side bear his or her own attorney fees and costs.

Amporn's statement of the points of error does not challenge the family court's conclusion.  See Hawaiʻi Rules of Appellate Procedure Rule 28(b)(4) ("Points not presented in accordance with this section will be disregarded[.]").  Nevertheless, Amporn argues "[David's] assets are significant compared to [Amporn] as shown in their separate Asset and Debt Statements."  Amporn's asset and debt statement provides either no information about the values of her assets, or values based on Thai baht with no exchange rate shown.  On this record, we cannot conclude that the family court abused its discretion by ruling that David and Amporn must bear their own attorneys' fees and costs.

For these reasons, the Divorce Decree entered by the family court on May 14, 2020, is affirmed.

DATED: Honolulu, Hawaiʻi, July 12, 2024.

On the briefs:

Scot Stuart Brower,
for Plaintiff-Appellant/
Cross-Appellee.

Fred I. Waki,
for Defendant-Appellee/
Cross-Appellant.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge